EDWARD P. HATCH, APPELLANT, V. NATHANIEL B. FALCONER
ET AL., APPELLEES.

FILED JANUARY 21, 1903.  No. 12,559.

Commissioner's opinion, Department No. 2.

1. **First Mortgagee in Possession:** SUBSEQUENT MORTGAGEE: TENANCY.
   A first mortgagee in possession of the mortgaged premises, is
   not the tenant of subsequent mortgagees.

2. ———: ———: ———: RENTAL VALUE: ACCOUNTING. It is the
   duty of a mortgagee in possession to account to subsequent
   mortgagees for the full and fair rental value of the premises
   while controlled by him.

APPEAL from the district court for Douglas county. Action of foreclosure and for accounting. Heard below before DICKINSON, J. Judgment of foreclosure of certain mortgage liens. Plaintiff appeals. *Affirmed.*

*Charles Ogden* and *Joel W. West,* for appellant.

*Edgar M. Morsman, Jr.,* and *Westel W. Morsman,* contra.

OLDHAM, C.

At and prior to December 14, 1895, Nathaniel B. Falconer was engaged in the mercantile business in Omaha, Nebraska, and was the owner of a leasehold interest in a business property in that city. The lease was made July 1, 1890, and was for a term of fifty years, upon rent reserved equivalent to $3,850 per annum, payable in quarterly instalments of $962.50 each. The lease provided, among other things, that the lessee should pay all taxes during the term, keep the property insured, make all necessary repairs, and rebuild in case of fire. On October 14, 1895, Falconer failed, and gave mortgages on his leasehold interest in this property to secure certain creditors for the following amounts: George A. Wilcox (first lien), $13,067.42; M. E. Smith & Co. (second lien), $886.-

Syllabus by court; catch-words by editor.

71; Tootle, Wheeler & Motter (third lien), $2,761; Lord & Taylor (fourth lien), $3,500; James McCreary & Co. (fifth lien), $500; Sherman, Cecil & Co. (sixth lien), $285.44; Lord & Taylor (seventh lien), $2,288.43; James McCreary & Co. (eighth lien), $1,518.70. At the time of the failure Falconer was in default for two quarterly instalments of rent and had allowed the taxes to become delinquent, and the insurance to lapse. In the December following the failure each of the above-named mortgagees signed an agreement reciting the giving of the mortgages in the order of their priority as above set forth, and the fact that Wilcox, the first mortgagee above named, had paid for the protection of his lien the taxes, insurance and rent, amounting to $2,895.10. The parties agreed that Wilcox should take an assignment from Falconer of the ground lease, and that such assignment should not operate as a merger of his first lien, or of his right to be reimbursed for the money already paid by him for the protection of his lien; that there should be no foreclosure of any of the mortgages during the period of four years; that Wilcox should during that time collect the rents of the building; that the rent so collected should be applied to the rent, insurance and other charges provided for in the ground lease, and to reimburse Wilcox for the money already advanced, and the balance in payment of the first mortgage. It was also agreed that if at any time during the four years the first mortgage should be fully paid, then the money received should be applied to the other mortgages in the order of their priorities as above set forth. There were other conditions in this agreement, which are not material to any question now in controversy and need not be recited. Wilcox, in conformity to this agreement, took an assignment of the leasehold interest from Falconer and wife as an additional security for his mortgage, and leased the property to Thomas Kilpatrick & Co., and collected the rents and applied the same to the charges arising under the lease and to his mortgage indebtedness, and continued in the possession of the property until April 18,

1890, when there was still due and unpaid on his first mortgage the sum of $5,396.44. He then assigned his mortgage debt and leasehold interest and rights under the agreement between him and the several mortgagees to Harriet N. Kilpatrick. Mrs. Kilpatrick then took possession of the premises, and continued to lease the same to Thomas Kilpatrick & Co., and collected the rent and continued to pay the charges arising under the principal lease, and applied the surplus to the payment of the Wilcox mortgage debt, of which she had become the owner. June 19, 1900, M. E. Smith & Co.'s second mortgage was assigned to Thomas Kilpatrick, and on November 24, 1889, the Tootle, Wheeler & Motter third mortgage lien was also sold and assigned to Thomas Kilpatrick; and on April 9, 1900, the Sherman, Cecil & Co.'s sixth mortgage lien was also assigned to Thomas Kilpatrick.

On May 16, 1900, the plaintiff in this cause of action, Edward P. Hatch, sole trader under the name and style of Lord & Taylor, and owner of the fourth and seventh mortgage liens, instituted the instant suit in the district court for Douglas county, setting out in his petition his ownership of the fourth and seventh mortgage liens, the amounts alleged to be due thereon, and asking for an accounting and decree of foreclosure, and also setting up the agreement between the several mortgagees substantially as above set forth, and alleged that the time fixed for the trusteeship of defendant Wilcox had expired, and asked for an accounting with Wilcox for the money collected and disbursed during the time of his trusteeship, and that a receiver be appointed by the court to take charge of the property and collect the rents, and for all other equitable relief. James McCreary & Co., the owner of the fifth and eighth mortgage liens, above set forth, answered the petition, setting up their mortgage liens, and joining in the prayer for an accounting and for a receiver.

Harriet N. Kilpatrick filed an answer to this petition, alleging her ownership of the Wilcox mortgage; the amount due and unpaid thereon; that it was the first mort-

gage lien; the assignment of the leasehold interest to her
as additional security for said lien; that she is collecting
the rents of the building at its full rental value and ap-
plying the same to the preservation of the property by pay-
ing the insurance and ground rent and taxes, and apply-
ing the remainder in discharge of the sum due to herself as
assignee of the first mortgage lien. She denied that the
interest and rights of other creditors are in jeopardy, and
alleged that a receiver is unnecessary; that she is ready
and willing, and has at all times been, to transfer all her
rights in the leasehold of the premises to any junior lien-
holder who will pay all liens prior to his own; and that
plaintiff has never offered to do so. Her answer also con-
tains a cross-petition, asking for the foreclosure of her
first mortgage.

Thomas Kilpatrick and Thomas Kilpatrick & Co. filed
a joint answer, denying the averments of plaintiff's petition
for the appointment of a receiver, alleging that the
premises were rented at full value; that the rent was
promptly paid each month to Harriet N. Kilpatrick; that
it was prudently and punctually applied to the preserva-
tion of the property; all to the advantage and security of
herself and all other parties in interest. The answer then
alleges the making and transfer of the mortgages given to
M. E. Smith & Co., Tootle, Wheeler & Motter and Sher-
man, Cecil & Co. to Thomas Kilpatrick by procurement of
Thomas Kilpatrick & Co., and prays that any decree that
may be rendered in the cause be so framed as to find and
fix the priority of the several mortgages held by plaintiff
and the several defendants, and the amount due thereon,
and for all other equitable relief.

Plaintiff filed a reply to the answers of Harriet N. Kil-
patrick and the joint answer of Thomas Kilpatrick and
Thomas Kilpatrick & Co., in the nature of a general denial.

The application for a receiver was denied and the cause
tried to the court, which found that the premises had been
rented for their full rental value during all the time they
were under the control of defendants Wilcox and Harriet

N. Kilpatrick; that the proceeds had been properly applied to the discharge of the conditions of the ground lease and the partial payment of the first mortgage lien of Harriet N. Kilpatrick. The court then found the amount still due on the first mortgage lien, the amount due on each of the subsequent mortgages, and entered a decree of foreclosure of the various mortgage liens. From this decree Edward P. Hatch, sole trader under the name and style of Lord & Taylor, prosecutes an appeal to this court.

An examination of the evidence contained in the bill of exceptions shows that the findings of the learned trial judge of the facts in this cause are fully supported by the testimony; consequently, the only question to be determined is whether or not the law has been properly applied to the facts in the judgment rendered. The appellant's prayer for a foreclosure of his mortgage and an accounting with the mortgagee in possession was granted, and the complaint in his brief is directed against the relief granted the senior mortgagees on their cross-petitions, his contention being that Thomas Kilpatrick & Co. was the tenant of the junior mortgagees Lord & Taylor and James McCreary & Co., that as such tenant it had no right to purchase through Harriet N. Kilpatrick and Thomas Kilpatrick the adverse title of the senior mortgagees to the ground-rent lease, that when it did so these purchases should be construed as having been made for the use of the landlord, and that at most the holders of these senior mortgages should only have been allowed, as against their landlords, the junior mortgagees, an accounting for the amount they had actually paid for the senior mortgages. It seems to us that this contention is wholly unfounded in principle. It proceeds on the theory that Wilcox, in the first instance, got control of the mortgaged premises by virtue of the contract which he entered into with his junior mortgagees, when in fact he got possession of the property by consent of the mortgagor, and no contract that he might have made with the junior mortgagees of this ground-rent lease could have given him possession of the mortgaged property. He

could only procure possession of the mortgaged premises either by consent of the mortgagor or by decree of a court of competent jurisdiction.. An examination of the contract which Wilcox made with the subsequent mortgagees, shows that he gained no right or advantage by that contract which he did not already have by reason of the priority of his mortgage; nor did he undertake to do anything which it would not have been his duty to have done had he taken possession of the mortgaged premises without any contract with them except the agreement to forbear legal proceedings on his mortgage for the period of four years. Wilcox, as first mortgagee, had a right to procure an assignment of the ground-rent lease from the common mortgagor as an additional security to his mortgage, and hold such assignment as an additional security, without having it merged in his mortgage. He had the right, as a first mortgagee in possession, to collect the rents and apply them exactly in the manner set forth in the contract. In fact, the contract amounted to nothing more nor less than an agreement among the different mortgagees that, as between themselves, Wilcox should take possession of the mortgaged property and apply the proceeds of the rent of such property in the manner that the law would have required him to have applied them in case no agreement had been entered into with the subsequent mortgagees.

From this view of the case it follows that Thomas Kilpatrick & Co. was the tenant of Wilcox and his assignee as first mortgagee in possession, and that it was not the tenant of any of the subsequent mortgagees. It is also apparent that Thomas Kilpatrick, even if he acted at the instance and request of Thomas Kilpatrick & Co., did not do anything adverse to the interest of the junior mortgagees when he purchased the two senior mortgages, for it could make no difference to the junior mortgagees who the owners of the senior mortgages were. The junior mortgagee had a right, if he so desired, to redeem from these mortgages and be subrogated to the rights of the senior mortgagees, no matter who the owners were. He also had

a right to have the first mortgagee in possession account for the full and fair rental value of the property while in his possession, and apply the rents in the manner that the learned trial court directed them to be applied at the trial of the cause.

The question of the necessity of a receiver for the protection of the mortgaged property *pendente lite* was tried on conflicting testimony to the trial court and the issue found against the contention of the appellant. We therefore conclude that the judgment of the trial court is fully sustained by law, and we recommend that it be affirmed.

BARNES and POUND, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.